UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA,

      -against-

KWAME LAKE,

                Defendant.
-------------------------------------X

<u>ORDER</u>
14-CR-0264(JS)

APPEARANCES

For Defendant:    Kwame Lake, <u>Pro Se</u>
                 Reg. No. 86188-053
                 FCI Allenwood Medium
                 Federal Correctional Institution
                 P.O. Box 2000
                 White Deer, Pennsylvania  17887

For United States:  Christopher Caffarone, Esq.
                 United States Attorney's Office
                 Eastern District of New York
                 610 Federal Plaza
                 Central Islip, New York  11722

SEYBERT, District Judge:

      Currently before the Court is the <u>pro se</u> motion of
Defendant Kwame Lake ("Defendant") seeking compassionate release
(hereafter, the "Motion").  (<u>See</u> Motion, ECF No. 699; <u>see also</u>
Reply, ECF No. 707; Suppl. Motion, ECF No. 724.[1])  The Government
opposes the Motion.  (<u>See</u> Opp'n, ECF No. 702.)  For the reasons
that follow, the Motion is **DENIED**.

---

[1]  When citing to Defendant's submissions, the Court uses the page
numbers provided by Defendant.

     Further, this Order rules upon Defendant's Supplemental
Motion for Compassionate Release (ECF No. 724), which the Court
deems to be encompassed within his original Motion.

<u>RELEVANT BACKGROUND</u>

I.   <u>Defendant's Underlying Conviction</u>

The Court assumes the parties' familiarity with Defendant's conviction.  By way of general background, the Court provides the following summary.  Defendant is a member of the Rollin' 60s Crips, a nationwide, violent criminal enterprise (the "Rollin 60s") (hereafter, the "Gang").  (<u>See</u> Case Docket, Presentence Investigation Report ("PSR") for Kwame Lake, ECF No. 300 (sealed), ¶¶ 2-7); <u>see also generally</u>, <u>United States v. Osborne</u>, No. 14-CR-0264, 2022 WL 1693668, at *1-2 (E.D.N.Y. May 26, 2022) (in denying co-defendant's Section 2255 habeas petition, generally describing the Gang); <u>Hernandez v. United States</u>, No. 14-CR-0264, 2021 WL 3426110, at *1 (E.D.N.Y. Aug. 5, 2021) (same). In a Superseding Indictment, Defendant was charged with: racketeering (Count One); racketeering conspiracy (Count Two); knowingly and intentionally using and carrying one or more firearms during and in relation to one or more crimes of violence, and knowingly and intentionally possessing said firearms in furtherance of such crimes of violence, which firearms were brandished (Count Eight); a conspiracy to murder and assault with dangerous weapons rival gang members, including the Bloods (Count 61); conspiracy to distribute controlled substances (Count 56); using firearms during a drug trafficking crime (Count 57); the February 10, 2013 robbery of an individual who sold footwear

(hereafter, the "Footwear-Seller-Robbery") (Racketeering Act 18); and participating in the October 20, 2010 attempted murder and assault of John Doe #9 (Counts 18-20). (See Superseding Indictment (S-5), ECF No. 120.) On February 11, 2016, Defendant pled guilty to the lesser-included offense of Count Eight, i.e., brandishing firearms during the conspiracy to rob and robbery of a drug dealer, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (See AYS Feb. 2, 2016 Min. Entry, ECF No. 216, see also PSR ¶ 1; Superseding Indictment (S-5), Count Eight, at 20.) Defendant was sentenced on October 19, 2016 to 60 months' imprisonment—the statutory mandatory minimum—to run consecutively to the undischarged state sentence he was serving in connection with the Footwear-Seller-Robbery. (See Lake Judgment, ECF No. 377.)

Defendant is currently serving his sentence at FCI Allenwood Medium in Allenwood, Pennsylvania (hereafter, "FCI Allenwood"), which sentence he began serving on December 4, 2020, after the conclusion of his state sentence. (See Opp'n at 2; Motion at 7); see also Fed. Bureau of Prisons ("BOP"): Find an Inmate, Kwame Lake (BOP Reg. No. 86188-053) (hereafter, the "Lake Locator Information") (identifying Defendant's location as "Allenwood Medium FCI"), https://www.bop.gov/inmateloc/ (last visited Dec. 20, 2023). He has a scheduled release date of March 8, 2025. See id.

## II.   Relevant Procedural History

Defendant moved for compassionate release on June 28, 2021, during the height of the COVID-19 Pandemic.  (See Motion.[2]) After the Government's opposition thereto, Defendant supplemented his Motion on February 9, 2022.  (See Suppl. Motion.)

## DISCUSSION

## I.   Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release:

---

[2]  The Court notes that while Defendant's Motion is dated June 28, 2021, it was not filed with the Court until July 6, 2021.  (See Motion at 1.)

exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)); see also United States v. Torres, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." (quoting United States v. Williams-Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72–73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before

them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same).  "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y.

May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-cr, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same); Ambrosio, 541 F. Supp. 3d at 254 (same); United States v. Reid, No. 05-CR-5596, 2021 WL 837321, at * 4 (E.D.N.Y. Mar. 5, 2021) ("Even if extraordinary and compelling reasons exist, they must outweigh the [Section] 3553(a) [F]actors to warrant sentence reduction." (citing 18 U.S.C. § 3582(c)(1)(A))).  "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II.   Application

    A.   Exhaustion

        It is undisputed that Defendant has exhausted his administrative remedy by having requested of the Warden compassionate release, which request was denied. (See Opp'n at 2.)  Having satisfied this threshold requirement, the Court continues to determine whether Defendant has met his burden of showing compassionate release is warranted in this instance.

B.   <u>Defendant  has  Failed  to  Establish  the  Existence  of
     Extraordinary and Compelling Circumstances</u>

Defendant  is  currently  31-years-old.   <u>See</u>  Lake  Locator
Information.  He claims he: suffers from asthma; is a former smoker
who smoked two-to-three- packs of cigarettes per day for 15 years;
has hypertension; and has "PTSD", which the Court presumes to mean
post-traumatic  stress  disorder.   (Motion  at  6.)   Defendant  also
baldly  asserts  he  "is  experiencing  deteriorating  physical  health
because  of  the  aging  process,  which  in  turn,  is  substantially
diminishing  his  ability  to  provide  self-care  within  the  correction
facility  and  it  shows  no  sign  of  improving."   (Motion  at  7.)
Further,  Defendant  puts  forth  that  his  mother,  who  is  now  in  her
mid-60s:  is  diabetic;  is  "no  longer  able  to  get  around  like  she
used to"; has high blood pressure; and, needs Defendant's financial
assistance.  (<u>Id.</u> at 8.)  He provides no further elaboration.  (<u>See
id.</u>)   Finally,  Defendant  states  he  would  like  to  become  a  part  of
his   soon-to-be   11-year-old   daughter's   life,   which   his
incarceration  has  greatly  curtailed.   (<u>Id.</u>)   Neither  individually
nor  in  concert  are  these  circumstances  extraordinary  or
compelling.

As  to  COVID-19  and  Defendant's  alleged  health  issues:
"Since the decline of COVID-19 cases and proliferation of vaccines,
courts  in  this  Circuit  have  generally  rejected  compassionate
release motions based on the threat posed by the virus, asserting

that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, <u>absent additional factors</u>.'" <u>United States v. Johnson</u>, No. 16-CR-0319, -- F. Supp. 3d --, 2023 WL 3093617, at *10 (E.D.N.Y. Apr. 26, 2023) (quoting <u>United States v. Oquendo</u>, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023)) (emphasis added). "In evaluating whether an individual's current risk from the pandemic warrants compassionate release, courts have examined their vaccine status, the COVID-19 situation at their specific correctional facility, and whether their co-morbidities are being managed." <u>Id.</u> (citations omitted). Further, as to COVID-19 variants, such variants are "considered less severe in causing illness and death." <u>Mayes v. United States</u>, No. 12-CR-0385, 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023).

Defendant admits he has been fully vaccinated. (<u>See</u> Motion at 23; Reply at 2, 6.) Additionally, FCI Allenwood is currently operating at BOP COVID-19 Operational Level 1, the BOP's lowest operational level, meaning the medical isolate rate is less than 2% and new community positive cases are less than 100 per 100,000 over the last seven days. <u>See</u> BOP FCI Allenwood Home Page, <u>available at</u> https://www.bop.gov/locations/institutions/alm/ (indicating Facility's current Operational Level is Level 1) (last visited Dec. 20, 2023); <u>see also</u> BOP COVID-10 Modified Operations Plan & Matrix, <u>available at</u>

https://www.bop.gov/coronavirus/covid19_modified_operations_guid

e.jsp ("provid[ing] a general overview about BOP COVID-19

Operation Levels: how they are determined, how operations are

affected, and related resources") (last visited Dec. 20, 2023).

Moreover, (1) despite his hypertension, which "appears well-

controlled with medication provided by [FCI Allenwood]", and (2)

even assuming, arguendo, he also has asthma,[3] there is nothing in

the record to contradict the Government's argument that

"[D]efendant is fully ambulatory and engages in all normal

activities of daily living." (Opp'n at 2-3.) Defendant has failed

to show that his medical conditions "so incapacitate him as to

warrant a reduction of his sentence." United States v. Lisi, 440

F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in

conjunction with the Application Notes to § 1B1.13 [of the U.S.

---

[3]  The Government asserts:

> In January 2021, the [D]efendant told the BOP
> that he has asthma, but the BOP noted that
> none of his medical records or transfer
> paperwork indicated that he suffers from
> asthma.  Nor has he received any treatment or
> medication for asthma while in BOP custody.
> During his presentence investigation, it does
> not appear that the [D]efendant told the
> Probation Department that he had asthma, but
> . . . defendant's grandmother and his
> girlfriend informed the Probation Department
> that the [D]efendant had asthma.

(Opp'n at 2 (first citing Defendant's medical records (see Ex. 2,
ECF No. 702-2); then citing Lake's PSR at ¶ 70.)

Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."); see also Oquendo, 2023 WL 199609, at *4 ("This Court continues to align itself with those courts that have found 'that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.'" (quoting United States v. Nwankwo, No. 12-CR-0031, 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases))); United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release." (collecting cases)). Nor does the Defendant offer any reply to refute the Government's contentions in this regard. (See Reply, in toto.)

   As to the claim of having been a heavy smoker: The Government highlights: "[t]he [D]efendant presents no details regarding his tobacco usage"; during a May 26, 2021 health visit, "he denied tobacco abuse"; and "the [D]efendant presents no ailments associated with smoking, such as cancer or pulmonary problems." (Opp'n at 14, 15.) Hence, there are no grounds for

considering this an extraordinary and compelling circumstance warranting compassionate release. (See id. at 15 (citing, Jones, 2020 WL 7640944, at *3 (finding history of smoking does not support release, where defendant "provides no detail regarding his tobacco usage, presents no ailments associated with smoking[,] and has been in federal prison since 2011, where smoking is banned")).) The Court agrees. Similarly, as to PTSD, Defendant fails to develop any arguments regarding his allegedly suffering from it. Therefore, the Court deems this basis for finding an extraordinary and compelling circumstance to grant compassionate release to be waived.

As to alleged family circumstances: Defendant's bald contentions regarding his mother's poor health as grounds for finding an extraordinary and compelling condition is unavailing. He has not provided any evidence substantiating this claim. Cf. Lisi, 440 F. Supp. 3d at 251-52 ("[Defendant], his mother, and numerous others have provided evidence to the Court indicating that [the mother] is both incredibly unwell, and has been for some time, and that whatever assistance she is currently receiving from home health aides is inadequate. Indeed, if [defendant] and his advocates are to be believed, [the mother] has been living in dire conditions.") The fact that Defendant's mother is having difficultly "getting around" does not rise to the level of "a close family member who is completely unable to care for himself or

herself." Id. at 252. Nor does Defendant assert that he is his mother's only available caregiver. Cf. id. (finding, where evidence indicated mother was incredibly unwell and defendant was "the only available caregiver for his mother," defendant had presented an extraordinary and compelling family circumstance). In the absence of such evidence, Defendant's mother's health conditions fail to warrant granting compassionate release. Likewise, Defendant's desire to have more involvement in his daughter's life, while laudable, is not grounds for granting his Motion. Indeed, the Court would be hard-pressed to find an incarcerated parent who does not wish to be a greater part of his or her child's life; by its mere near-universality, this reason for wanting to be released from prison is no more than ordinary and provides no support for Defendant's Motion.

Finally, as to harshness of incarceration caused by the Pandemic: "Undoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'" Johnson, 2023 WL 3093617, at *10 (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of

confinement can constitute extraordinary and compelling circumstances warranting compassionate release." Id. (quoting Oquendo, 2023 WL 199609, at *5, and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

Here, while discussing case law that found harsh conditions of confinement, in conjunction with other circumstances, to be an extraordinary and compelling circumstance warranting compassionate release (see Motion at 23-26 (discussing United States v. Hatcher, No. 18-CR-0454, 2021 WL 1535310 (S.D.N.Y. Apr. 19, 2021)), Defendant "[could] not begin to explain the severe toll this past 15 months[4] has exacted from him." (Id. at 26.) Instead, he generally complains that those months "ha[ve] been pure hell." (Id. at 25.)

---

[4]  The Court notes that only a portion of the 15 months to which Defendant refers applies to his federal sentence, which began on December 4, 2020.  (See Opp'n at 2.)  Prior to that time, Defendant was serving a separate, state-court-imposed sentence of imprisonment.  (See id.; see also id. at 17.)

Upon the record presented, the Court finds Defendant's reliance upon the Hatcher case to be misplaced as it is factually distinct from his own.  Moreover, failing to explain the severe toll he contends to have suffered, there is no basis for the Court to find the conditions-of-confinement at FCI Allenwood during the Pandemic rose to the level of extraordinary and compelling, thereby warranting the granting of compassionate release.  In any event, this is not the type of case where Defendant is subject to a long sentence; his federal sentence is 60 months, of which he has now served slightly more than 36 months.  Cf., e.g., United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at * (E.D.N.Y. July 12, 2023) (finding, where defendant had served more than 18 years of a 32-year sentence, defendant's long sentence and serious health conditions, including Type II diabetes that was worsening and which was proving difficult for defendant to manage with necessary self-care, caused "the harshness of COVID-related restrictions [to] weigh in favor of a sentence reduction even if they do not independently constitute an extraordinary and compelling reason to grant compassionate release"); Oquendo, 2023 WL 199609, at *5-6 (finding, where defendant was sentenced in 2014 to 151 months' imprisonment, his serious health issues suffered while in federal custody, and the length and totality of the Pandemic-induced conditions-of-confinement to which defendant was subjected,

constituted extraordinary and compelling circumstances under Section 3582(c)(1)(A)(i)).

In sum, even considering in combination all the circumstances presented by Defendant, their totality does not rise to the level of extraordinary and compelling. Hence, Defendant has not met his burden of showing entitlement to compassionate release. See Jones, 17 F.4th at 374 ("Thus, extraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").

C.   The Section 3553(a) Factors

"The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." Gotti, 433 F. Supp. 3d at 615; see also Jones, 2023 WL 8613867, at *2 ("[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actos' is 'an alternative and

independent basis for denial of compassionate release.'" (quoting

United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

Johnson, 2023 WL 3093617, at *12 (E.D.N.Y., 2023).

Here, Defendant does not meaningfully address the Section 3553(a) Factors. (See generally Motion and Reply.) Unsurprisingly, the Government does. (See Opp'n at 16-18.) It contends this "Court sentenced [D]efendant to 60 months' imprisonment to run consecutively to an undischarged state sentence for a different robbery based on a careful examination of the Section 3553(a) factors, all of which continue to apply and require the [D]efendant's continued detention." (Id. at 17.) The Court agrees.

As a member of the Rollin 60s Gang, one of the most violent on Long Island, Defendant participated in the armed robbery of a drug dealer, as well as a conspiracy to assault and murder rival gang members. (See PSR ¶¶ 9, 13, 23.) Moreover, despite

his relative young age when he first appeared before this Court, Defendant already had a significant criminal history, presenting with "10 criminal history points resulting in a criminal history category of V." (Opp'n at 17 (citing PSR ¶ 54); see also PSR ¶¶ 46, 48, 50, 51).) Further, granting this Motion, which would effectively reduce Defendant's sentence to approximately 37 months' imprisonment, would not provide a just punishment for the serious nature of the crime in which Defendant participated, i.e., an armed robbery. Relatedly, granting Defendant's Motion upon the reasons he presents would not promote respect for the law. Moreover, both specific and general deterrence weigh against awarding Defendant early release. As previously stated, at a young age, Defendant came to this Court with numerous convictions; and, he committed the instant offense while on probation for a state conviction. Additionally, gang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences.

Hence, having considered the applicable Section 3553(a) Factors, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Factors would override those circumstances. Instead, the Court's 60-month sentence of imprisonment continues to be appropriate to:

promote respect for the law; provide just punishment; adequately deter criminal conduct; and, protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.  (Cf. Statement of Reasons, ECF No. 378 (sealed), Part VIII (stating a sentence of 60 months' imprisonment sufficient, but not greater than necessary, to meet the goals of Section 3553(a)).)

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 699) and Supplemental Compassionate Release Motion (ECF No. 724) are **DENIED** in their entireties.

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   December 20, 2023
         Central Islip, New York